William **WALLA** and Louis Walla, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. 75–C–53.

United States District Court, E. D. Wisconsin.

June 2, 1977.

J. Robert Kaftan, Green Bay, Wis., for plaintiffs.

William J. Mulligan, U.S. Atty., by William E. Callahan, Jr., Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendant United States has moved for partial summary judgment. It seeks dismissal of the plaintiffs' second cause of action. The second count avers that a cow yard facility on the plaintiffs' farm was defectively covered with stones which caused injury to the plaintiffs' cattle. The second cause of action sounds in strict liability pursuant to *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967).

In a written ruling dated September 17, 1975, I denied the defendant's motion to dismiss the second count. That earlier motion urged that claims based on strict liability could not be pursued under the federal tort claims act, and such contention was rejected by the court.

The instant motion, which seeks summary judgment as to the second count, is bottomed on the defendant's contention that the Wisconsin strict liability rules do not apply to the instant case because (1) the defendant rendered services as opposed to the supplying of a product, and (2) the United States is not engaged in a business within the concept of products liability. I find that the defendant's motion should be granted.

William Walla asserts that he had been told by the county executive director for the agricultural stabilization and conservation service, James Lukas, that he had to use crushed stone on his cow yard in order to qualify for cost sharing. The plaintiffs also rely on the deposition of the district conservationist for the soil conservation service who stated that it was the latter organization which drew up the plans for the cow yard and saw to it that such plans were implemented according to the specifications.

These contentions tend to support the plaintiffs' argument that the United States was the "designer and constructor of the Walla cow yard." Nevertheless, the record clearly establishes that the defendant's participation was in the nature of giving technical assistance and advice in connection with the installation of the yard. It was the Foster Construction Company which in fact did the installation. The plaintiffs paid Foster Construction Company to deliver the crushed rock and spread it on the cow yard. Although the money for such work was furnished to the plaintiffs by the United States, I am unable to hold that the United States supplied labor and materials used in the installation.

■ The defendant's efforts related to planning and designing. These services, in my opinion, are beyond the scope of the strict liability doctrine. In *LaRossa v. Scientific Design Company*, 402 F.2d 937, 942 (3rd Cir. 1968), the court said:

"The disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer and the difficulty of requiring the injured party in consumer products cases to trace back along the channel of trade to the source of production in the search for the origin of the defect in order to prove negligence have been among the reasons for the emergence of the doctrine of strict liability in tort. An additional element has been the recognition that the mass producer of a product made for consumer use should as a matter of public policy bear the responsibility of an insurer against a defect in the product which causes harm to the consumer.

"Professional services do not ordinarily lend themselves to the doctrine of tort liability without fault because they lack the elements which gave rise to the doctrine. There is no mass production of goods or a large body of distant consumers whom it would be unfair to require to trace the article they used along the channels of trade to the original manufacturer and there to pinpoint an act of negligence remote from their knowledge and even from their ability to inquire."

**620**

See also *Raritan Trucking Corp. v. Aero Commander, Inc.,* 458 F.2d 1106, 1114 (3rd Cir. 1972).

A second basis for the court's sustaining of the defendant's motion for summary judgment as to count two is the fact that the United States did not act as a seller nor did it receive monetary consideration for the sale of a product. Thus, it did not participate in a commercial transaction so as to activate the plaintiffs' right to proceed on a *Dippel* claim. The role of the United States in the instant transaction was not that of commercial venturer.

 For strict liability to apply, it is contemplated that there has been a sale or other commercial transaction which the defendant entered for its gain. The doctrine of strict liability most normally applies to buyers and sellers. The *Dippel* decision adopts § 402A of the Restatement of Torts which imposes responsibility upon "sellers" of "products" to "consumers". Even though strict liability has been applied to eleemosynary suppliers such as hospitals, I am not persuaded that it can be or should be extended to a governmental entity whose "profit" is the public good.

Therefore, IT IS ORDERED that the defendant's motion for partial summary judgment dismissing count two of the complaint be and hereby is granted.

IT IS ALSO ORDERED that count two be and hereby is dismissed.